EDMUND G. BROWN JR.
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
PAMELA C. HAMANAKA
Senior Assistant Attorney General
JASON C. TRAN
Deputy Attorney General
DAVID E. MADEO
Deputy Attorney General
State Bar No. 180106
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-4925
 Fax:  (213) 897-6496
 E-mail:  David.Madeo@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE ANTHONY BORJA,**<br><br>Petitioner,<br><br>**v.**<br><br>**MATTHEW CATE, CDCR, Secretary,**<br><br>Respondent. | CV 09-2420 DDP (SS)<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |

1

# TABLE OF CONTENTS

2

**Page**

3   Memorandum Of Points And Authorities ...................................................... 1

4   Procedural History ............................................................................................ 1

Statement Of Facts ........................................................................................... 2

5             A.    Prosecution Evidence ................................................. 2

6             B.    Defense Evidence .................................................. 5

7   Petitioner's Contentions ................................................................................. 5

Argument ........................................................................................................... 5

8       I.    Standard of review ......................................................... 5

9       II.   The California Court of Appeal did not contravene or unreasonably apply Supreme Court precedent when it found that
10   the trial court properly admitted the gang expert's testimony ............. 8

11             A.    The relevant state court proceedings ......................... 8

          B.    Failure to state a federal constitutional claim .......................... 11

12             C.    The absence of controlling Supreme Court precedent
13   requires rejection of petitioner's claim; in any event, it was reasonably rejected by the California Court of Appeal ..... 12

14       III.  The California Court of Appeal did not contravene or unreasonably apply Supreme Court precedent when it found that
15   there was sufficient evidence to support the gang enhancements ...... 15

16             A.    The California Court of Appeal's opinion ................................ 15

          B.    The California Court of Appeal reasonably found
17   sufficient evidence supporting the gang enhancement ............. 16

18       IV.  The California Court of Appeal did not contravene or unreasonably apply supreme court precedent when it found that
19   there was sufficient evidence to support the assault convictions ....... 20

20             A.    The California Court of Appeal's opinion ................................ 20

          B.    The California Court of Appeal reasonably found
21   sufficient evidence supporting the assault convictions on Counts Three through Six ........................................................ 21

22   Conclusion ...................................................................................................... 23

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

*Bell v. Cone*,
  125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) ............................................................7

*Bell v. Cone*,
  535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ....................................6

*Boyde v. Brown*,
  404 F.3d 1159 (9th Cir. 2005) ............................................................................13

*Brecht v. Abrahamson*,
  507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) ..................................14

*Briceno v. Scribner*,
  555 F.3d 1069 (9th Cir. 2009) ......................................................................18, 19

*Bueno v. Hallahan*,
  988 F.2d 86 (9th Cir. 1993) ................................................................................11

*Carey v. Musladin*,
  549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) ......................................6

*Clark v. Brown*,
  450 F.3d 898 (9th Cir. 2006) ..............................................................................14

*Clark v. Murphy*,
  331 F.3d 1062 (9th Cir. 2003) ..............................................................................6

*Dugger v. Adams*,
  489 U.S. 401, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989) ..................................11

*Early v. Packer*,
  537 U.S. 3, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ......................................6, 7

*Estelle v. McGuire*,
  502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ......................................11

*Fry v. Pliler*,
  551 U.S. 112, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) ....................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Henry v. Estelle*,
33 F.3d 1037 (9th Cir. 1993), *rev'd sub nom on other grounds in Duncan v. Henry*, 513 U.S. 364, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) .................. 14

*Hernandez v. Small*,
282 F.3d 1132 (9th Cir. 2002) ............................................................. 6

*Holley v. Yarborough*,
568 F.3d 1091 (9th Cir. 2009) ........................................................... 13

*Huerta v. Hedgepeth*,
2009 WL 1181631 (C.D. Cal. 2009) .................................................. 18

*Hunter v. Aispuro*,
982 F.2d 344 (9th Cir. 1992) ............................................................... 7

*In re Winship*,
397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ........................ 16, 17, 21

*Jackson v. Virginia*,
443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ........................ 16, 17, 21

*Jammal v. Van de Kamp*,
926 F.2d 918 (9th Cir. 1991) ....................................................... 11, 13

*Jeffries v. Blodgett*,
5 F.3d 1180 (9th Cir. 1993) ............................................................ 11

*Jones v. Wood*,
207 F.3d 557 (9th Cir. 2000) ............................................................ 17

*Juan H. v. Allen*,
408 F.3d 1262 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1145 ............................ 17

*Lacy v. Lewis*,
123 F. Supp. 2d 533 (C.D. Cal. 2000) ............................................. 7, 12

*Lambert v. Blodgett*,
393 F.3d 943 (9th Cir. 2004) ............................................................. 6

iii

(Test Case Number)

# TABLE OF AUTHORITIES
### (continued)

Page

*Langford v. Day*,
110 F.3d 1380 (9th Cir. 1996) ............................................................... 11

*Lindh v. Murphy*,
521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997) ..................... 5

*Little v. Crawford*,
449 F.3d 1075 (9th Cir. 2006) ............................................................... 12

*Lockyer v. Andrade*,
538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) .................. 6, 7

*Mendoza v. Attorney Gen. of State of Cal.*,
2009 WL 926814 (E.D. Cal. 2009) ....................................................... 18

*Milton v. Wainwright*,
407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972) .......................... 11

*Park v. California*,
202 F.3d 1146 (9th Cir. 2000) ............................................................... 11

*People v. Bland*,
28 Cal. 4th 313, 121 Cal. Rptr. 2d 546 (2002) ..................................... 22

*People v. Bolin*,
18 Cal. 4th 297, 75 Cal. Rptr. 2d 412 (1998) ....................................... 16

*People v. Gardeley*,
14 Cal. 4th 605, 59 Cal. Rptr. 2d 356 (1997) ....................................... 17

*People v. Griggs*,
216 Cal. App. 3d 734, 265 Cal. Rptr. 53 (1989) ................................... 21

*People v. Johnson*,
26 Cal. 3d 557, 162 Cal. Rptr. 431 (1980) ........................................... 16

*People v. Lee*,
28 Cal. App. 4th 1724, 34 Cal. Rptr. 2d 723 (1994) ............................ 22

*People v. Raviart*,
93 Cal. App. 4th 258, 112 Cal. Rptr. 2d 850 (2001) ............................ 22

(Test Case Number)

1

2

# TABLE OF AUTHORITIES
### (continued)

Page

3

4
*People v. Riva*,
    112 Cal. App. 4th 981, 5 Cal. Rptr. 3d 649 (2003) ....................................21, 22

5

6
*People v. Valdez*,
    175 Cal. App. 3d 103, 220 Cal. Rptr. 538 (1985) ..............................................21

7

8
*People v. Williams*,
    26 Cal. 4th 779, 111 Cal. Rptr. 2d 114 (2001) ..................................................21

9
*Poland v. Stewart*,
    169 F.3d 573 (9th Cir. 1999) ............................................................................11

10

11
*Price v. Vincent*,
    538 U.S. 634, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) ................................5

12

13
*Pulley v. Harris*,
    465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) .......................................11

14

15
*Sarausad v. Porter*,
    479 F.3d 671 (9th Cir. 2007) .............................................................................17

16

17
*Schlup v. Delo*,
    513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) .................................17

18

19
*Shumate v. Newland*,
    75 F. Supp. 2d 1076 (N.D. Cal. 1999)..........................................................20, 23

20

21
*Teague v. Lane*,
    489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) .................................1

22
*Tinsley v. Borg*,
    895 F.2d 520 (9th Cir. 1990)........................................................................11, 13

23

24
*United States v. Abel*,
    469 U.S. 45, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984) .....................................13

25

26
*United States v. Rhodes*,
    229 F.3d 659 (7th Cir. 2000)..............................................................................13

27

28
*United States v. Takahashi*,
    205 F.3d 1161 (9th Cir. 2000)............................................................................13

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Walters v. Maass,*
  45 F.3d 1355 (9th Cir. 1995) ....................................................................... 11, 16

*Williams v. Evans,*
  2009 WL 1460832 (E.D. Cal. 2009) ................................................................. 18

*Williams v. Taylor,*
  529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ............................... 6, 7

*Windham v. Merkle,*
  163 F.3d 1092 (9th Cir. 1998) .......................................................................... 13

*Woodford v. Visciotti,*
  537 U.S. 19, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) ...................................... 5

*Wright v. Van Patten,*
  128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ........................................................... 6

*Wright v. West,*
  505 U.S. 277, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) ................................ 17

*Ylst v. Nunnemaker,*
  501 U.S. 797, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) .................................. 7

## STATUTES

28 U.S.C. § 2254 ...................................................................................................... 14

28 U.S.C. § 2254(a) ............................................................................................. 1, 11

28 U.S.C. § 2254(d) .......................................................................................... 1, 5, 12

28 U.S.C. § 2254(d)(1) ...................................................................................... 6, 17

28 U.S.C. § 2254(e) .................................................................................................. 1

Cal. Penal Code § 186.22 ....................................................................................... 17

Cal. Penal Code § 186.22(b)(1) ......................................................................... 17, 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(Test Case Number)

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

Cal. Penal Code § 186.22(b)(1)(C)..................................................................1, 2

4

Cal. Penal Code § 187(a) ...................................................................................1

5

Cal. Penal Code § 240 ......................................................................................21

6

7

Cal. Penal Code § 245(a)(2) ........................................................................1, 21

8

Cal. Penal Code § 246 .......................................................................................1

9

Cal. Penal Code § 664 .......................................................................................1

10

Cal. Penal Code § 667(a)(1) ...........................................................................1, 2

11

Cal. Penal Code § 667(b)-(i)..............................................................................1

12

Cal. Penal Code § 12022.7(a) ............................................................................1

13

14

Cal. Penal Code § 12022.53(b)..........................................................................1

15

Cal. Penal Code § 12022.53(c) ..........................................................................1

16

Cal. Penal Code § 12022.53(d)..........................................................................1

17

18

**COURT RULES**

19

Fed. R. Civ. P. 25(d) .........................................................................................1

20

21

22

23

24

25

26

27

28

(Test Case Number)

Respondent, James A. Yates,[1] Warden of the Pleasant Valley State Prison at Coalinga, California, hereby submits this Answer to the Petition for Writ of Habeas Corpus ("Petition"), and admits, denies and alleges as follows:

1. Petitioner is in Respondent's custody pursuant to a valid judgment of conviction in Los Angeles County Superior Court Case No. KA073052.

2. The Petition appears to be timely.

3. The claims in the Petition appear to be exhausted in the state courts.

4. Ground One of the Petition should be dismissed as being not cognizable for failing to present a federal constitutional question.  *See* 28 U.S.C. § 2254(a).

5. Grounds One through Three of the Petition should be denied and dismissed with prejudice because the California Court of Appeal's denial of relief on these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor was the denial of relief based upon an unreasonable determination of the facts presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).

6. No claim in the Petition appears to be procedurally barred.

7. No claim in the Petition appears to be barred by the non-retroactivity doctrine set forth in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

8. No evidentiary hearing is necessary to resolve any of the claims alleged in the Petition, nor has Petitioner demonstrated that one is warranted under 28 U.S.C. § 2254(e).

9. This Answer is based on the records and files in this case; the Memorandum of Points and Authorities filed herewith; the documents lodged concurrently with this pleading ("LD"), including the Clerk's Transcripts ("CT"; LD K) and

---

[1] James A. Yates is the warden of the prison where Petitioner is currently incarcerated.  Substitution of the proper custodian's name is authorized by Federal Rule of Civil Procedure 25(d).

1

Reporter's Transcripts ("RT"; LD L) which were prepared in connection with Petitioner's state appeal.

10. Except as herein expressly admitted, Respondent denies each and every allegation of the Petition and specifically denies that Petitioner's confinement is improper, denies that any judgment underlying Petitioner's confinement is improper, and denies that Petitioner's rights are being violated.

WHEREFORE, Respondent respectfully requests that the Petition be denied and dismissed with prejudice.

Dated:  July 20, 2009                          Respectfully submitted,

                                               EDMUND G. BROWN JR.
                                               Attorney General of California
                                               DANE R. GILLETTE
                                               Chief Assistant Attorney General
                                               PAMELA C. HAMANAKA
                                               Senior Assistant Attorney General
                                               JASON C. TRAN
                                               Deputy Attorney General


                                               **/s/ David E. Madeo**
                                               DAVID E. MADEO
                                               Deputy Attorney General
                                               *Attorneys for Respondent*

LA2009506432
60441473.doc

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### PROCEDURAL HISTORY

Following a jury trial in the Los Angeles County Superior Court, Petitioner was convicted of attempted willful, deliberate, premeditated murder, in violation of California Penal Code[2] sections 664/187(a) (count 1); assault with a firearm, in violation of section 245(a)(2) (counts 2 through 6); and shooting at an occupied motor vehicle, in violation of section 246 (counts 7 and 8). The jury also found, as to counts 1 and 2, that Petitioner personally inflicted great bodily injury, within the meaning of section 12022.7(a), and, as to counts 1, 7, and 8, that Petitioner personally used a firearm, within the meaning of section 12022.53(b), (c), and (d). The jury further found that the crime was committed for the benefit of a criminal street gang within the meaning of section 186.22(b)(1)(C). (2CT at 263-79; 3RT at 417-23.) The trial court then found that Petitioner had one prior conviction pursuant to section 667(a)(1) and six prior "strike" convictions pursuant to sections 667(b) through (i), and 1170.12(a) through (d), California's Three Strikes law. (2CT at 315; 3RT at 440-41.)

The trial court sentenced Petitioner to a total term of fifty-eight years plus one hundred seventy-five years to life in state prison. On count 1, the court imposed twenty-five years to life as a third strike, plus twenty-five years to life for the firearm enhancement and five years for the prior conviction enhancement under section 667(a)(1). On count 3, the court imposed a consecutive term of twenty-five years to life, as a third strike, plus four years for the firearm enhancement, ten years for the gang enhancement, and five years for the prior conviction enhancement under section 667(a)(1). On each of counts 4 through 6, the court imposed a consecutive term of twenty-five years to life, as a third strike, plus sixteen months for the firearm enhancement, three years and four months for the gang

---

[2]All further statutory references are to the California Penal Code, unless otherwise indicated.

1

enhancement, and five years for the prior conviction enhancement under section 667(a)(1). On count 8, the court imposed a consecutive term of twenty-five years to life, as a third strike, plus five years for the prior conviction enhancement under section 667(a)(1). On count 2, the court imposed and stayed a three-year sentence. On count 7, the court imposed and stayed a five-year sentence. (2CT at 315-24; 3RT at 447-48.)

Petitioner appealed his conviction. (LD A, B, F.) The California Court of Appeal affirmed the judgment and reversed and remanded for resentencing.[3] (LD G.) Petitioner filed a petition for review in the California Supreme Court. (LD H.) On January 3, 2008, the California Supreme Court denied the petition. (LD I.)

Petitioner constructively filed the instant Petition on March 29, 2009.

## STATEMENT OF FACTS

### A.   Prosecution Evidence

On November 4, 2005, at about 8:00 p.m., Carlos Andrade was in the front yard of a house in East Valinda when he saw a black Mustang being driven recklessly up and down the street. Andrade yelled at the driver, whom he recognized as Petitioner, to slow down. Petitioner stopped in front of the house, stepped out, and stared at Andrade for about one minute. Petitioner then went back to his car and drove away. (2RT at 69-73, 116.) Minutes later, Petitioner returned and exited his car with a handgun. Petitioner pointed the gun at Andrade and fired three or four shots. Andrade ran and was shot in the lower back. (2RT at 72-73, 116-17, 138-43.)

Just before the shooting occurred, Rene Bautista, accompanied by his wife and two children, pulled into his driveway next to the yard where Andrade stood. Bautista's eleven-year-old son exited the car to open the driveway fence. Bautista

---

[3] On remand, the trial court struck the section 186.22(b)(1(C) enhancements as to counts 3, 4, 5, and 6, and imposed an additional consecutive four years on each of counts 4, 5, and 6, in accordance with the California Court of Appeal's opinion. (LD J.)

2

1    then heard loud gunshots coming from the direction of Andrade and yelled for his

2    family to get down.  (2RT at 134-37.)  One of the gunshots struck Bautista's

3    vehicle door, and another struck Bautista's garage door.  (2RT at 138-40.)

4        Los Angeles County Sheriff's Deputy Thomas Gallagher responded to the

5    incident and found Andrade suffering from a gunshot wound in a neighbor's house.

6    Andrade told the deputy that he was shot in the back by a neighborhood "cholo"

7    known as "Toro."  He then said the shooter's name was "Jose Borja."  (3RT at 175-

8    78.)  About ten minutes later, Deputy Gallagher spoke with Bautista, who said he

9    saw a black Mustang pull up next to Andrade and the driver say something to

10    Andrade.  When Andrade did not respond, Petitioner got out and pointed a gun at

11    him.  (3RT at 179-81.)

12        Bautista's car had a bullet hole in the driver's side door.  After taking off the

13    interior panel, Bautista found a bullet, which he gave to Los Angeles County

14    Sheriff's Detective Steven Skahill.  There was also a bullet hole in Bautista's

15    garage door.  The bullet went through the door and stopped in the drywall, where it

16    was recovered.  (2RT at 145-46; 3RT at 184-85.)  The black Mustang was

17    registered to Petitioner.  (3RT at 284-85.)

18        On November 9, 2005, Andrade identified Petitioner as the shooter in a six-

19    pack photographic lineup.  He also identified a photograph of Petitioner's black

20    Mustang with some damage to the front.  (2RT at 77-81, 115-17.)  Bautista

21    identified two photographs, one of which was of Petitioner, in a six-pack as looking

22    similar to the shooter.  Bautista initially circled Petitioner's photograph; he then

23    circled the other photograph because that person had a similar mustache.  (2RT at

24    148-50; 3RT at 213-16.)  Bautista had lived in the area for about four years and had

25    often seen Petitioner driving his black Mustang.  He identified photographs of

26    Petitioner's car.  (2RT at 117-18, 139, 150-51.)  Bautista told Detective Skahill that

27    Petitioner was a Hurley Street gangster who lived around the corner at his mother's

28    house.  Bautista previously had an encounter with Petitioner on July 4, 2005, when

1   Petitioner, driving his black Mustang, intentionally ran over Bautista's dog.  (2RT
2   at 164-65; 3RT at 181-82, 218.)

3       Andrade did not want to testify because he was afraid.  He failed to appear in
4   court as a witness as ordered and was arrested.  (2RT at 87-88; 3RT at 237-38.)
5   Bautista also did not want to testify and was afraid for his family.  He told
6   Detective Skahill that gang members had driven by his house and stared at him.
7   (2RT at 155-56; 3RT at 238, 240.)

8       Detective Skahill testified that there were two Hispanic gangs that claimed the
9   area of the shooting: Hurley Street and the East Side Dukes.  He explained that
10  these criminal street gangs were involved in several types of criminal activities, and
11  he described several Hurley Street gang members who had been convicted of
12  violent crimes.  Gang members gain respect in the community by committing
13  crimes and instilling fear through intimidation.  (3RT at 219-23, 235, 238-39, 246-
14  48.)

15      Petitioner claimed to be a member of Hurley Street and had numerous gang
16  tattoos: "Hurley Street" across his chest and "SGV," for "San Gabriel Valley," on
17  his arm.  Field identification cards dated July 19, 2005, and February 5, 2005, noted
18  Petitioner as a gang member with Hurley Street tattoos.  (3RT at 223-24, 229-33.)
19  Based on the facts of this case, Detective Skahill opined that the offenses were
20  committed for the benefit of a criminal street gang.  He explained that the shooting
21  was committed by an active gang member in the gang's territory after a "stare-
22  down contest."  The shooter would have to "save face" for the gang in order to
23  promote it.  If a gang member was challenged by a member of the community and
24  did not respond, he would be considered weak, and the gang would lose respect.
25  (3RT at 233-37.)  Detective Skahill noted that this incident was not a spontaneous
26  act.  Petitioner was driving erratically, and Andrade yelled at him to slow down.
27  When Petitioner stopped in front of Andrade, they engaged in a "stare down" or

28

4

"mad dogging contest" for about a minute, until Petitioner left and came back to shoot Andrade.  (3RT at 312-13.)

### B.   Defense Evidence

Petitioner did not testify and presented no evidence.

### PETITIONER'S CONTENTIONS

1. It was prejudicial error for a gang expert to testify as to Petitioner's guilt.  (Pet. at 5.)

2. Petitioner's gang enhancement findings were based upon insufficient evidence.  (Pet. at 5.)

3. Petitioner's convictions for assault against the Bautista family was based upon insufficient evidence.  (Pet. at 6.)

### ARGUMENT

## I.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective on April 24, 1996.  When a state court adjudicates a claim on the merits, the AEDPA bars federal habeas corpus relief on that claim unless the state-court adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the state Court proceeding."  28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-39, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003).  This is a "'highly deferential standard for evaluating state-court rulings' which demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997)).

A state court decision is "contrary to" federal law if it either "applies a rule that contradicts the governing law" as set forth in Supreme Court cases, or reaches a

different decision from a Supreme Court case when confronted with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *accord Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (*Bell I*); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).  A state court makes an "unreasonable application" of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413; *Bell I*, 535 U.S. at 694; *accord Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ("AEDPA does not require federal habeas court to adopt any one methodology in deciding only question that matters under § 2254(d)(1) -- whether state court decision is contrary to or involved unreasonable application of clearly established Federal law").

It is not enough merely to show that the state court was incorrect.  Federal habeas corpus relief is not available simply because a federal court independently concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Andrade*, 538 U.S. at 75-76; *Early v. Packer*, 537 U.S. 3, 11, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002); *Bell I*, 535 U.S. at 694; *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004) ("we may not review state court judgments on the same terms as we do for direct appeals").

If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law.  *See Wright v. Van Patten*, 128 S. Ct. 743, 747, 169 L. Ed. 2d 583 (2008); *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653-54, 166 L. Ed. 2d 482 (2006).  Decisions of the Supreme Court are the only ones that can form the basis justifying habeas relief; lower federal courts cannot themselves establish such a principle to satisfy the AEDPA bar.  *Clark*, 331 F.3d at 1069; *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir.

2002) (any principle on which a petitioner seeks to rely must be found in the holdings, as opposed to dicta, of the Supreme Court decisions).  Under the AEDPA, "clearly established federal law" is the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 531 U.S. at 71; *see also Williams*, 529 U.S. at 412.

A state court's failure to cite any federal law in its opinion does not run afoul of the AEDPA.  In fact, a state court need not even be aware of applicable Supreme Court precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *Bell v. Cone*, 125 S. Ct. 847, 853, 160 L. Ed. 2d 881 (2005) (per curiam) (*Bell II*) (federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation; federal courts must presume that the state court applied the same constitutionally sufficient review it used in earlier cases absent some contrary indication).

Here, the California Court of Appeal affirmed Petitioner's conviction in its entirety.  The state appellate court rejected Petitioner's instant claims on the merits on direct appeal.  (LD G at 5-10, 13-15.)  The California Supreme Court reached the merits of Petitioner's claims when it denied his petition for review without citation to authority or a written opinion.  (LD H, I.)  *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992).  However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Lacy v. Lewis*, 123 F. Supp. 2d 533, 539-40 (C.D. Cal. 2000).  Thus, the deferential standard of review under AEDPA applies to Petitioner's claims.  As set forth below, the AEDPA precludes relief in this case.

1
2
3

**II.    THE CALIFORNIA COURT OF APPEAL DID NOT CONTRAVENE OR UNREASONABLY APPLY SUPREME COURT PRECEDENT WHEN IT FOUND THAT THE TRIAL COURT PROPERLY ADMITTED THE GANG EXPERT'S TESTIMONY**

4      In Ground One, Petitioner contends that it was prejudicial error "for a gang

5  expert to testify as to Petitioner's guilt."[4]   (Pet. at 5.)  This claim fails to present a

6  federal question.  In addition, the California Court of Appeal rejected Petitioner's

7  claim on the merits (LD G at 8-10), and that determination is not contrary to, or an

8  unreasonable application of, clearly established federal law as determined by the

9  Supreme Court.  Nor is the state court decision based on an unreasonable

10  determination of the facts in light of the evidence presented.

11      **A.    The Relevant State Court Proceedings**

12      Detective Skahill testified about the Hurley Street gang and their general

13  activities, territory, rivals, and customs.  The detective then provided his opinion

14  based on the facts of this case:

15          Q [Prosecutor]:  . . . Having the knowledge of Hurley Street and

16      an opinion with respect to [Petitioner] and any relationship he might have

17      to Hurley Street and being familiar with the facts of this case, do you

18      have an opinion with respect to whether this offense was committed for

19      the benefit of or at the direction of or in association with a criminal street

20      gang?

21          A [Detective Skahill]: Yes, sir.  [¶]  . . . The reason this is a gang-

22

23      [4] As supporting facts, Petitioner states, "See accompanying P's & A's and Exhibits in Support, incorporated herein by reference."  But he fails to attach any

24  exhibits or further briefing to his Petition.  On June 4, 2009, this Court rejected exhibits submitted by Petitioner on June 2, 2009.  (June 4, 2009, Notice of

25  Discrepancy and Order.)  Nevertheless, even if this Court were to look at Petitioner's similar claim in his state appellate brief (LD A at 15-21), this claim

26  fails.

27      Similarly, in Grounds Two and Three, Respondent assumes that Petitioner's similar claims in his state appellate brief (LD A at 9-15, 26-31) constitute part of

28  his federal claims.

related incident, it's committed by a gang member who is an active gang member.  It happens in his own territory.  And as described in the incident report itself, that the actions that [Petitioner] did or the things he committed, he had to more or less save face for the gang in order to – as far as promote it.

In the earlier testimony it was given that the vehicle that [Petitioner] was driving in up and down the street, that the shooting victim . . . had yelled at him to stop – to stop driving up and down the street in an erratic manner.  [Petitioner] stopped the car and engaged in a stare down contest.  Call it mad dogging on the street.

And after a minute or two of this, [Petitioner] got into the car, left the scene, drove away, came back about five to ten minutes later and in retribution for being fronted off he did the shooting, and he shot the victim.

The reason this is a gang-related incident is due to the fact that [Petitioner] is known in the area as a gang member.  That was testified to by Deputy Gallagher and the other victim witnesses that they knew him as a gangster, cholo, [who] lived down around the corner.  Even Mr. Bautista had told me that he was a Hurley Street gang member, which is the primary gang in that area – or one of the primary gangs.

There were people out in front in both instances, the first one in the front off or mad dogging or he was yelled at to stop driving up and down the street.  You have somebody who's a member of a community yelling at a gang member.  In order for the gang member or the gang to save face, the gang member who's been fronted off has to do something.  He has to save face, both personally and for the gang because he's been confronted.

If you're out on the streets . . . if two gangs met out on the street

9

1    and a challenge was issued, if you didn't return the challenge, you would

2    be thought of [as] a coward and your gang would be thought of as weak.

3    In this instance even though the victim is not a gang member, he's a

4    citizen and confronts a gang member, yells at him [to] stop driving the

5    car so fast. That's a challenge. He's threatened him. Everybody sees

6    this.

7        So now, in order to save face for the gang and for himself, he has

8    to do something, get some payback, retaliate. He comes back later on

9    after the initial confrontation and shoots the victim. That is saving face

10   because in the gang culture and everything out there, everybody knows

11   who does what. They're really close and interspersed in that territory.

12   Word's going to get out, so and so from somewhere, he got fronted off by

13   nobody and he didn't do nothing about it, so the gang will lose respect.

14       If he does something, the respect goes up. His respect goes up

15   within the gang itself too because he did something about it, he didn't

16   coward down. That's how it becomes a gang incident.

17   (3RT at 233-37.) Detective Skahill later stated that this shooting was a gang-related

18   crime and not simply a "road rage" incident. (3RT at 313.) Defense counsel

19   objected to the detective's expert testimony on the grounds of foundation and

20   relevance. (3RT at 221.)

21       The California Court of Appeal rejected Petitioner's gang expert claim on the

22   merits on direct appeal. The appellate court noted that the California Supreme

23   Court "has unequivocally held expert opinion testimony of the type admitted in this

24   case is proper." The court found that Detective Skahill's "opinions were not only

25   proper but also necessary to explain to the jury how a gang's reputation and control

26   over its territory is enforced . . . ." Accordingly, the trial court did not abuse its

27   discretion in admitting the gang expert testimony. (LD G at 8-10.)

28

10

### B.    Failure to State a Federal Constitutional Claim

Petitioner's claim fails to present a federal question.  Federal habeas corpus is available only on behalf of a person in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  Federal habeas is unavailable to retry state issues.  *Milton v. Wainwright*, 407 U.S. 371, 377, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972).  A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).  A violation of state law standing alone is not cognizable in federal court on habeas.  *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989).

Federal courts will not interfere with a state court's evidentiary rulings unless the rulings were arbitrary or so prejudicial that they resulted in a trial which was fundamentally unfair in violation of due process.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993); *Bueno v. Hallahan*, 988 F.2d 86, 87 (9th Cir. 1993); *Jammal*, 926 F.2d at 919.  Only in unusual cases will it be found that a state court ruling on state evidentiary law invokes a federal issue.  *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).  Here, the application of the routine rules of evidence does not present a federal question.  Thus, Petitioner's evidentiary claim fails.

Despite any claim that Petitioner's due process rights were violated (*see* LD A at 15, 17), the trial court's evidentiary decisions were solely a matter of state law.  "[A] petitioner may not 'transform a state law issue into a federal one merely by asserting a violation of due process . . . .'"  *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (quoting *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)).  "Merely adding the phrase 'due process' to state law claims does not transform those claims into federal claims; rather, they remain state law claims 'dressed up' as

federal due process claims." *Lacy v. Lewis*, 123 F. Supp. 2d 533, 551 (C.D. Cal. 2000). "'We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.'" *Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006). Petitioner has cited no federal constitutional right that would have demanded that any testimony by the gang expert was improper or should have been excluded at trial. Accordingly, Petitioner's evidentiary claim must be dismissed as being not cognizable.

### C. The Absence of Controlling Supreme Court Precedent Requires Rejection of Petitioner's Claim; in any Event, It Was Reasonably Rejected by the California Court of Appeal

Even assuming Ground One presents a federal claim, it warrants no federal habeas relief.

> Under AEDPA, even clearly erroneous admissions of evidence that
> render a trial fundamentally unfair may not permit the grant of federal
> habeas corpus relief if not forbidden by "clearly established Federal law,"
> as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where
> the Supreme Court has not adequately addressed a claim, this court
> cannot use its own precedent to find a state court ruling unreasonable. [¶]
> The Supreme Court has made very few rulings regarding the admission
> of evidence as a violation of due process. Although the Court has been
> clear that a writ should be issued when constitutional errors have
> rendered the trial fundamentally unfair, it has not yet made a clear ruling
> that admission of irrelevant or overtly prejudicial evidence constitutes a
> due process violation sufficient to warrant issuance of the writ. Absent
> such "clearly established Federal law," we cannot conclude that the state
> court's ruling was an "unreasonable application." Under the strict
> standards of AEDPA, we are therefore without power to issue the writ on
> the basis of [the petitioner's] . . . claims.

12

1  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (involving admission of

2  evidence that defendant possessed pornographic and obscene materials) (footnote

3  omitted).

4       Accordingly, Ground One must be rejected due to the absence of controlling

5  Supreme Court precedent compelling federal habeas relief on Petitioner's claim that

6  the admission of the alleged irrelevant and prejudicial gang evidence violated his

7  due process rights.  In any event, the claim was reasonably rejected on the merits by

8  the California Court of Appeal for the reasons discussed below.

9       The Ninth Circuit has held that, to be entitled to habeas corpus relief based

10 on an error under state evidentiary law, Petitioner must show that the admission of

11 the evidence rendered the trial so fundamentally unfair as to violate due process.

12 *Tinsley*, 895 F.2d at 530.  Petitioner has a heavy burden to show a due process

13 violation based upon an evidentiary decision.  *Boyde v. Brown*, 404 F.3d 1159,

14 1172-73 (9th Cir. 2005).

15      Due process is only violated where no permissible inferences can be drawn

16 from admitted evidence.  *Jammal*, 926 F.2d at 918.  Evidence need not be powerful

17 to be relevant.  *United States v. Rhodes*, 229 F.3d 659, 661 (7th Cir. 2000).  A

18 permissible inference can be inferred from the use of gang evidence.  *Windham v.

19 Merkle*, 163 F.3d 1092, 103-04 (9th Cir. 1998).  Evidence of gang affiliation is

20 admissible when relevant to a material issue in the case.  *United States v. Abel*, 469

21 U.S. 45, 49, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984); *see also United States v.

22 Takahashi*, 205 F.3d 1161, 1164-65 (9th Cir. 2000).

23      Here, as found by the trial court and the state appellate court, the challenged

24 evidence was admissible to prove the allegations of the street gang enhancement.

25 Detective Skahill did not specifically testify as to Petitioner's mental state or his

26 motive.  Rather, he responded to a hypothetical question based on the facts of this

27 case and opined that the hypothetical crimes were committed for the benefit of a

28 criminal street gang.  Thus, the expert testimony was properly admitted.

   Moreover, Petitioner has failed to show that any alleged error in admitting the expert testimony had a substantial and injurious effect or influence in determining the jury's verdict.  *See Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328, 168 L. Ed. 2d 16 (2007) (even if state court does not have occasion to apply the test for assessing prejudice applicable under federal law, the Brecht standard applies uniformly in all federal habeas corpus cases under § 2254); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *see also Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006) (reviewing under *Brecht* whether there was "a reasonable probability" that the jury would have reached a different result but for the alleged error); *Henry v. Estelle*, 33 F.3d 1037, 1041 (9th Cir. 1993) (*Brecht* harmless error standard applies to constitutional magnitude, trial type errors, and is the equivalent of harmless error standard under California law), *rev'd sub nom on other grounds in Duncan v. Henry*, 513 U.S. 364, 366, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995).

   Even without Detective Skahill's opinion testimony, there was strong evidence that Petitioner committed the instant crimes for the benefit of, or in association with, a criminal street gang.  Petitioner was known in the neighborhood as a Hurley Street gang member who went by the moniker of "Toro."  (2RT at 164-65; 3RT at 175-82, 218.)  Andrade and Bautista were each afraid to testify because of Petitioner's gang status, and gang members had driven past Bautista's house and stared after the shooting.  (2RT at 87-88, 155-56; 3RT at 237-40.)  Petitioner also claimed to be a member of Hurley Street and had numerous gang tattoos: "Hurley Street" across his chest and "SGV," for "San Gabriel Valley," on his arm.  Field identification cards dated July 19, 2005, and February 5, 2005, noted Petitioner as a gang member with Hurley Street tattoos.  (3RT at 223-24, 229-33.)

   The evidence is overwhelming that Petitioner committed the shootings against Andrade and the Bautista family.  Andrade told Deputy Gallagher just minutes after he was shot that Petitioner was the shooter.  Andrade identified

Petitioner's name and gang moniker.  (3RT at  175-78.)  About ten minutes later, Deputy Gallagher spoke with Bautista, who said he saw a black Mustang pull up next to Andrade and the driver say something to Andrade.  When Andrade did not respond, Petitioner got out and pointed a gun at him.  (3RT at 179-81.)  The black Mustang was registered to Petitioner.  (3RT at 284-85.)

Five days after the shooting, Andrade and Bautista each separately identified Petitioner as the shooter in a six-pack photographic lineup.  They also identified a photograph of Petitioner's black Mustang with some damage to the front.  (2RT at 77-81, 115-17.)  Bautista identified two photographs, one of which was of Petitioner, in a six-pack as looking similar to the shooter.  Bautista initially circled Petitioner's photograph and circled another photograph only because that person had a similar mustache.  (2RT at 148-50; 3RT at 213-16.)  On these facts, any alleged error in admitting the challenged gang expert testimony did not have a substantial and injurious effect or influence upon the jury's verdict.  Accordingly, Ground One must be denied.

**III.  THE CALIFORNIA COURT OF APPEAL DID NOT CONTRAVENE OR UNREASONABLY APPLY SUPREME COURT PRECEDENT WHEN IT FOUND THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE GANG ENHANCEMENTS**

In Ground Two, Petitioner claims that there was insufficient evidence to prove the gang allegations.   (Pet. at 5.)  The California Court of Appeal rejected Petitioner's claim on the merits (LD G at 5-8), and that determination is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Nor is the state court decision based on an unreasonable determination of the facts in light of the evidence presented.

**A.    The California Court of Appeal's Opinion**

The California Court of Appeal found that sufficient evidence supported the criminal street gang enhancement.  (LD G at 5-8.)  The appellate court concluded that there was ample evidence from which the jury could conclude that Petitioner

1    committed the shooting for the benefit of his gang, including: the shooting occurred

2    in the "heart of Hurley Street gang territory"; the "mad-dogging" stance Petitioner

3    assumed with Andrade; and the ruthless nature of the attack, which served to

4    intimidate the entire community and was consistent with typical gang demands for

5    respect on its turf.  (LD G at 7-8, citing *People v. Johnson*, 26 Cal. 3d 557, 578, 162

6    Cal. Rptr. 431 (1980), which in turn cites *Jackson v. Virginia*, 443 U.S. 307, 315-

7    19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), for the "substantial evidence" test.)

8    **B.    The California Court of Appeal Reasonably Found Sufficient
         Evidence Supporting the Gang Enhancement**
9

10       It is well established that evidence is sufficient to support a conviction if,

11   viewing all the evidence in the light most favorable to the prosecution, any rational

12   trier of fact could have found the essential elements of the crime beyond a

13   reasonable doubt.  *Jackson*, 443 U.S. at 319; *see also In re Winship*, 397 U.S. 358,

14   364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (the Due Process Clause protects the

15   accused against conviction except upon proof beyond a reasonable doubt of every

16   fact necessary to constitute the crime with which he is charged).  The same standard

17   is used by California courts in determining the sufficiency of evidence.  *See People*

18   *v. Bolin*, 18 Cal. 4th 297, 331, 75 Cal. Rptr. 2d 412 (1998); *Johnson*, 26 Cal. 3d at

19   575-78.  The California Court of Appeal used this standard in determining that

20   there was sufficient evidence to support Petitioner's convictions.  (LD G at 6.)

21       In making this determination, the reviewing court "must respect the province

22   of the jury to determine the credibility of witnesses, resolve evidentiary conflicts,

23   and draw reasonable inferences from proven facts by assuming that the jury

24   resolved all conflicts in a manner that supports the verdict."  *Walters v. Maass*, 45

25   F.3d 1355, 1358 (9th Cir. 1995).  The jury must be free to disbelieve testimony and

26   to infer that the truth is otherwise when such an inference is supported by

27   circumstantial evidence regarding the actions of the accused.  *Jackson*, 443 U.S. at

28   319.  Moreover, under *Jackson*, the assessment of the credibility of witnesses is

generally beyond the scope of review. *Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). The *Jackson* test has been referred to as a "high standard." *See Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000) (noting that although the evidence in that case was almost entirely circumstantial and relatively weak, it was sufficient to support the conviction). Insufficient evidence claims are reviewed by looking at the elements of the crime under state law. *Jackson*, 443 U.S. at 324 n.16; *Sarausad v. Porter*, 479 F.3d 671, 678 (9th Cir. 2007).

Under 28 U.S.C. § 2254(d)(1), the issue is whether the state court's decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of a particular case. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (under AEDPA, the Court applies "the standards of *Jackson* with an additional layer of deference" to the state court's decision), *cert. denied*, 126 S. Ct. 1145 and 126 S. Ct. 1142 (2006). A federal habeas petitioner faces a "heavy burden" when challenging the sufficiency of the evidence used to obtain a state conviction on federal habeas grounds. *Id.* at 1275 (acknowledging the "deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review") (quoting *Wright v. West*, 505 U.S. 277, 296-97, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992)).

Section 186.22(b)(1) imposes increased punishment for felonies "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Under California law, expert testimony on gang activities is admissible to prove elements of a section 186.22 gang enhancement. *People v. Gardeley*, 14 Cal. 4th 605, 617, 59 Cal. Rptr. 2d 356 (1997).

The Ninth Circuit recently clarified the requirements for a gang enhancement under California law:

First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a]

17

1    criminal street gang." Cal. Penal Code § 186.22(b)(1).  Second, the

2    prosecutor must show that the defendant committed the crime "with the

3    specific intent to promote, further, or assist in any criminal conduct by

4    gang members."  *Id.*  We have previously recognized the importance of

5    keeping these two requirements separate, and have emphasized that the

6    second step is not satisfied by evidence of mere membership in a criminal

7    street gang alone.  *See Garcia v. Carey*, 395 F.3d 1099, 1102-03 & n.5

8    (9th Cir. 2005).

9    *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009).

10        In *Briceno*, the Ninth Circuit found that there was insufficient evidence to

11   establish a "specific intent to promote, further, or assist in any criminal conduct by

12   gang members" because "circumstantial evidence of intent" with respect to the

13   robberies committed by the petitioner and his fellow Hard Times gang member was

14   "wholly lacking."  *Briceno*, 555 F.3d at 1081.  The Ninth Circuit noted that the

15   robberies were not committed in Hard Times territory or on the "turf" of a rival

16   gang, neither the petitioner nor his fellow gang member made their gang

17   membership known to the robbery victims, and there was no evidence whatsoever

18   of any connection between the gang and the robberies.  *Id.*  The Ninth Circuit also

19   found that an expert's testimony by itself could not establish sufficient evidence of

20   the specific intent requirement, especially where there is evidence that the

21   defendant had a different motivation, such as financial gain.  *Id.*

22        But where there is circumstantial evidence, other than the gang expert's

23   opinion, of the defendant's intent to commit the crime for the benefit of a criminal

24   street gang, a jury could reasonably infer that the defendant committed the crime

25   within the meaning of section 186.22(b)(1).  *Huerta v. Hedgepeth*, 2009 WL

26   1181631, *17 n.14 (C.D. Cal. 2009); *see also Williams v. Evans*, 2009 WL

27   1460832, *25-27 (E.D. Cal. 2009); *Mendoza v. Attorney Gen. of State of Cal.*, 2009

28   WL 926814, *14 (E.D. Cal. 2009).

1    Here, in contrast to *Briceno* and *Garcia*, there was circumstantial evidence of

2    Petitioner's intent to commit the crime for the benefit of a criminal street gang, in

3    addition to the gang expert's opinion testimony.  Detective Skahill testified that

4    Hurley Street was a criminal street gang that was active in the East Valinda area,

5    where the shooting occurred.  The detective opined that, based on the facts of this

6    case, Petitioner was a member of that gang.  This opinion was amply supported by

7    Petitioner's conspicuous tattoo on his chest proclaiming his support for the gang

8    and its greater area of San Gabriel Valley.  Field identification cards from other

9    officer contacts, dated July 19, 2005, and February 5, 2005, also noted Petitioner as

10   a gang member with Hurley Street tattoos.  (3RT at 223-24, 229-33.)  Further,

11   Andrade told the deputy that he was shot in the back by a neighborhood "cholo"

12   known as "Toro."  He then identified the shooter as Petitioner.  (3RT at 175-78.)

13   Bautista also told Detective Skahill that Petitioner was a Hurley Street gangster

14   who he knew lived in his neighborhood.  (2RT at 164-65; 3RT at 181-82, 218.)

15   Detective Skahill explained that the instant shooting was committed by an

16   active gang member in his gang's territory after a "stare-down contest."  The

17   shooter would have to "save face" for the gang in order to promote it.  If a gang

18   member was challenged by a member of the community and did not respond, he

19   would be considered weak, and the gang would lose respect.  (3RT at 233-37.)

20   Detective Skahill noted that this incident was not a spontaneous act.  Petitioner was

21   driving erratically, and Andrade yelled at him to slow down.  When Petitioner

22   stopped in front of Andrade, they engaged in a "stare down" or "mad dogging

23   contest" for about a minute, until Petitioner left and came back to shoot Andrade.

24   (3RT at 312-13.)   Finally, Detective Skahill provided an expert opinion that the

25   crimes of attempted murder, assault with a firearm, and shooting at an occupied

26   motor vehicle, in counts 1 through 8, were committed for the benefit of a criminal

27   street gang.  Specifically, he opined that Petitioner's firing his gun at Andrade

28   would benefit the Hurley Street criminal street gang by maintaining respect and fear

19

1    in the community.

2        Accordingly, there was ample evidence from which a reasonable trier of fact

3    could conclude beyond a reasonable doubt that Petitioner committed the crimes in

4    association with and for the benefit of his gang.  The California Court of Appeal

5    agreed, finding that the jury could have reasonably found that Petitioner committed

6    the crimes for the benefit of the gang.  (LD G at 8.)  Petitioner is essentially asking

7    this Court to draw different inferences from those drawn by the jury and reweigh

8    the evidence.  This is impermissible.  *See Shumate v. Newland*, 75 F. Supp. 2d

9    1076, 1097 (N.D. Cal. 1999) (habeas petitioner's sufficiency argument rejected

10   because he was not allowed to "re-hash" the weight of the evidence on habeas).

11   Accordingly, Petitioner's sufficiency claim must be rejected.

12   **IV.  THE CALIFORNIA COURT OF APPEAL DID NOT**
13   **CONTRAVENE OR UNREASONABLY APPLY SUPREME**
     **COURT PRECEDENT WHEN IT FOUND THAT THERE WAS**
     **SUFFICIENT EVIDENCE TO SUPPORT THE ASSAULT**
14   **CONVICTIONS**

15       In Ground Three, Petitioner claims that there was insufficient evidence to

16   support his convictions for assault against the Bautista family in counts 3 through 6.

17   (Pet. at 6.)  The California Court of Appeal rejected Petitioner's claim on the merits

18   (LD G at 13-15), and that determination is not contrary to, or an unreasonable

19   application of, clearly established federal law as determined by the Supreme Court.

20   Nor is the state court decision based on an unreasonable determination of the facts

21   in light of the evidence presented.

22       **A.    The California Court of Appeal's Opinion**

23       The California Court of Appeal found that sufficient evidence supported the

24   assault convictions.  (LD G at 13-15.)  The appellate court held that there was

25   sufficient evidence from which the jury could conclude that Petitioner harbored the

26   necessary intent to assault the members of the Bautista family, including: the

27   Bautistas' car had just driven into the driveway adjacent to the yard where Andrade

28   stood when Petitioner fired, and there was no evidence Petitioner did not see the car

1  or its occupants.  The appellate court found that a reasonable person would have

2  realized if he fired at a person standing with friends in front of a home in a

3  residential neighborhood early on a Friday evening, the bullet could strike other

4  pedestrians or residents, whether or not those individuals were intended targets.

5  The California Court of Appeal noted that this case was similar to *People v. Riva*,

6  112 Cal. App. 4th 981, 997, 5 Cal. Rptr. 3d 649 (2003), which found sufficient

7  evidence to support the necessary intent.  (LD G at 13-15.)

8
9
> **B.    The California Court of Appeal Reasonably Found Sufficient Evidence Supporting the Assault Convictions on Counts Three Through Six**

10      As stated previously, evidence is sufficient to support a conviction if,

11  viewing all the evidence in the light most favorable to the prosecution, any rational

12  trier of fact could have found the essential elements of the crime beyond a

13  reasonable doubt.  *Jackson*, 443 U.S. at 319; *see also Winship*, 397 U.S. at 364.

14  After noting the "substantial evidence" test in its discussion of the previous claim

15  (LD G at 6), the California Court of Appeal clearly applied this standard in

16  determining that there was sufficient evidence to support Petitioner's convictions.

17  (LD G at 13-15.)

18      To prove an assault in violation of section 245(a)(2), the prosecution must

19  establish that (1) a person was assaulted and (2) the assault was committed with a

20  firearm.  An assault is "an unlawful attempt, coupled with the present ability, to

21  commit a violent injury on the person of another."  § 240; *see People v. Griggs*, 216

22  Cal. App. 3d 734, 739, 265 Cal. Rptr. 53 (1989).  Present ability means that a

23  defendant has "maneuvered himself into such a location and equipped himself with

24  sufficient means that he appears to be able to strike immediately at his intended

25  victim."  *People v. Valdez*, 175 Cal. App. 3d 103, 112, 220 Cal. Rptr. 538  (1985).

26  Pointing a loaded gun in a threatening manner at a victim constitutes an assault,

27  because the assailant has the present ability to inflict a violent injury on the other

28  and the act by its nature will probably and directly result in such injury.  *People v.*

1    *Williams*, 26 Cal. 4th 779, 782, 111 Cal. Rptr. 2d 114 (2001).  Once a defendant has

2    attained the means and location to strike immediately, he has the present ability to

3    injure, for the purposes of finding that he has committed an assault.  *People v.*

4    *Raviart*, 93 Cal. App. 4th 258, 267, 112 Cal. Rptr. 2d 850 (2001).

5        Assault is a general intent crime; therefore, there is no intent to transfer.

6    *People v. Lee* , 28 Cal. App. 4th 1724, 1737, 34 Cal. Rptr. 2d 723 (1994). The

7    defendant need not intend to strike any particular person to be guilty of such an

8    assault.  *Id.*  Rather, when the defendant shoots into a group of persons primarily

9    targeting only one of them, he can be convicted of assault with a deadly weapon as

10   to the nontargeted members.  *People v. Bland*, 28 Cal. 4th 313, 329, 121 Cal. Rptr.

11   2d 546 (2002).

12       Here, Petitioner fired multiple shots at Andrade, the victim in counts 1 and 2,

13   as Andrade turned to run away in front of a house on a residential street.  The

14   Bautista family, the victims in counts 3 through 6, were pulling into their driveway

15   next door as the shots were fired.  One bullet struck the Bautista vehicle, while

16   another struck the Bautista house.  In pointing and shooting his gun, Petitioner

17   clearly had the present ability to inflict a violent injury on the victims.

18       To the extent Petitioner argues, as he did on direct appeal, that there was no

19   evidence that he was aware of the presence of the Bautistas (*see* LD A at 26-31),

20   the argument was reasonably rejected by the California Court of Appeal.  In *Riva*,

21   112 Cal. App. 4th at 998, the California Court of Appeal found that the facts of that

22   case "would lead a reasonable person to realize if he fired a gun at someone in a car

23   at this time of day in this kind of neighborhood the bullet could strike a pedestrian

24   and a battery would directly, naturally and probably result from his conduct."  *Id.*

25   Similarly, here, a reasonable person would realize that firing a gun at someone in

26   the front yard of a residential street in the early evening could cause a bullet to

27   strike a nearby pedestrian or resident and that a battery would directly, naturally,

28   and probably result from his conduct.  Accordingly, the evidence was sufficient to

1  support Petitioner's convictions for assault in counts 3 through 6.

2         The California Court of Appeal concluded that the jury could have

3  reasonably found that Petitioner harbored the necessary intent to assault the

4  Bautista family.  (LD G at 15.)  Petitioner is again essentially asking this Court to

5  draw different inferences from those drawn by the jury and reweigh the evidence.

6  This is impermissible.  *See Shumate*, 75 F. Supp. 2d at 1097.  Accordingly,

7  Petitioner's sufficiency claim must be rejected.

8                              **CONCLUSION**

9         For the foregoing reasons, Respondent respectfully requests the Petition for

10  Writ of Habeas Corpus be denied and dismissed with prejudice.

11  Dated:  July 20, 2009                    Respectfully submitted,

12                                           EDMUND G. BROWN JR.
                                             Attorney General of California
13                                           DANE R. GILLETTE
                                             Chief Assistant Attorney General
14                                           PAMELA C. HAMANAKA
                                             Senior Assistant Attorney General
15                                           JASON C. TRAN
                                             Deputy Attorney General
16

17

18                                           **/s/ David E. Madeo**
                                             DAVID E. MADEO
19                                           Deputy Attorney General
                                             *Attorneys for Respondent*

20  LA2009506432
    60441473.doc
21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   ___*BORJA v. CATE*___          No.   __CV 09-2420 DDP (SS)__

I hereby certify that on **July 20, 2009**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. On **July 20, 2009**, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

**Jose Anthony Borja**
**CDC #T-54311**
**Pleasant Valley State Prison**
**P.O. Box 8504**
**Coalinga, CA 93210**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **July 20, 2009**, at Los Angeles, California.

_____          _____
          B. Santos                          Signature
          Declarant

DEM;bs
LA2009506462
60418561.doc